## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DARRELL BARNWELL, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 2:20CV00011 |
| | ) | |
| and | ) | **OPINION AND ORDER** |
| | ) | |
| **HARLAN LEE LAND, LLC, ET AL.,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Plaintiff-Intervenors, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **ARK LAND, LLC, ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

*Daniel R. Bieger, DAN BIEGER, PLC, Bristol, Tennessee, and David B. Jordan, DAVE B. JORDAN, P.C., Kingsport, Tennessee, for Plaintiffs; Bryson J. Hunter and Risa S. Katz-Albert, SPILMAN THOMAS & BATTLE, PLLC, Roanoke, Virginia, and Mark E. Heath, SPILMAN THOMAS & BATTLE, PLLC, Charleston, West Virginia, for Plaintiff-Intervenors; Grahmn N. Morgan and August T. Johannsen, DINSMORE & SHOHL LLP, Lexington, Kentucky, for Defendant Ark Land, LLC; James H. Price, LACY, PRICE & WAGNER, P.C., Knoxville, Tennessee, Timothy E. Scott, Kingsport, Tennessee, and Kenneth D. Hale, THE HALE LAW FIRM, Bristol, Tennessee, for Defendants Kopper-Glo Mining LLC and INMET Mining LLC.*

In this civil suit invoking the court's diversity jurisdiction,[1] the plaintiffs and

plaintiff-intervenors seek recovery of coal wheelage payments under various legal

---

[1] Although it was not clear from the complaints, I am satisfied that the parties are completely diverse based on the supplemental filings submitted at my direction. *See* ECF Nos. 86–91. "[A] limited liability company is assigned the citizenship of its members." *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004); *see also*

theories. The defendants have moved to dismiss the amended complaints, contending that the claims are barred by res judicata and that the plaintiffs and plaintiff-intervenors have failed to state viable claims for relief.

For the reasons that follow, I agree with defendant Ark Land, LLC that part of the plaintiffs' claim against it for unpaid wheelage royalties is precluded by my dismissal with prejudice of a prior related lawsuit. However, I find that the plaintiff-intervenors' claims are not precluded because the plaintiffs were not their privies with respect to the prior suit and settlement. I further find that the amended complaints plausibly state claims sufficient to survive the motions to dismiss and that factual issues make dismissal at this stage inappropriate.

I.

The amended complaints filed by the plaintiffs and plaintiff-intervenors allege the following facts, which I must accept as true for purposes of deciding the motions to dismiss.

*A. Plaintiffs' Amended Complaint.*

The plaintiffs and plaintiff-intervenors are part owners of an approximately 4,000-acre tract of land located partially in Virginia and partially in Kentucky ("the Property"). They collectively own an undivided 40% interest in the Property. In

---

*Travelers Indem. Co. of Am. v. Portal Healthcare Sols., L.L.C.*, 644 F. App'x 245, 246 (4th Cir. 2016) (unpublished).

2011, Ark Land Co. (Ark Land)[2] and Lone Mountain Processing, Inc. (Lone Mountain) owned a 60% interest in the Property. The Property fully surrounds a parcel on which a coal processing plant is located. Thus, any coal going to or coming from the processing plant must be transported across the Property.

Ark Land and Lone Mountain formerly owned the processing plant. The plaintiffs and plaintiff-intervenors, as grantors, and Ark Land and Lone Mountain, as grantees, entered into a Wheelage and Easement Agreement effective December 30, 2011 ("the Wheelage Agreement"). The Wheelage Agreement allows Ark Land and Lone Mountain to transport coal from mines in Kentucky on underground belt lines to the processing plant in exchange for a fee, known as a wheelage royalty. The preparation plant processes more than a million tons of coal per year.

In 2017, Ark Land conveyed its interest in the Property to Revelation Energy, LLC (Revelation) and/or Blackjewel, LLC (Blackjewel). On July 1, 2019, Revelation and Blackjewel filed for Chapter 11 bankruptcy. Revelation and/or Blackjewel sold their 60% interest in the Property to Kopper Glo Mining, LLC (Kopper) and INMET Mining, LLC (INMET) on September 17, 2019. The sale was approved by the bankruptcy court. Kopper and INMET now own and operate the coal preparation plant as well.

---

[2] The party named as a defendant in this case is Ark Land, LLC rather than Ark Land Co. The parties do not address this discrepancy. To avoid confusion, I will refer to both as Ark Land.

From September 17, 2017, until August 28, 2020, more than 1,010,113.92 tons of coal were hauled across the Property. Based on the fee set forth in the Wheelage Agreement, the plaintiffs and plaintiff-intervenors should have been paid $94,146.05 in wheelage royalties. Revelation and/or Blackjewel had begun transporting coal through the Property in September 2017 without paying any wheelage royalties. The plaintiffs sued and a settlement was reached with Revelation.

Revelation and/or Blackjewel defaulted on the settlement agreement on May 25, 2019, when they failed to pay the April 2019 wheelage royalty. On June 25, 2019, Revelation and/or Blackjewel failed to pay the wheelage royalty for May 2019. When Revelation and Blackjewel filed their bankruptcy petition on July 1, 2019, they had not paid wheelage royalties for April, May, or June 2019.

Between September 2019 and August 28, 2020, Kopper and/or INMET transported at least 177,000 tons of coal across the Property. They have not paid any wheelage royalties and have not reaffirmed the Wheelage Agreement. The Wheelage Agreement requires a defaulting grantee to pay property taxes, mineral taxes, and attorney's fees of the grantors. The defendants have not paid these amounts, and the plaintiffs therefore argue that the defendants have breached Articles 2, 6, and 8 of the Wheelage Agreement.

On October 10, 2019, the plaintiffs notified Kopper and INMET that they either owed wheelage royalties under the Wheelage Agreement or they were trespassing. Kopper and/or INMET continued to haul coal across the property without paying wheelage royalties. The plaintiffs allege that on January 30, 2020, "Revelation and or Blackjewel rejected the Wheelage Agreement by failing to assume and cure as required by the Bankruptcy Code." Pls.' Am. Compl. ¶ 23, ECF No. 28.

The plaintiffs allege that Kopper and/or INMET have benefitted in the amount of five dollars per ton of coal hauled across the Property, for a total benefit of $231,130.30 accrued from September 15, 2019, until August 28, 2020. According to the plaintiffs, these defendants

> have benefitted substantially from [their] continued use of the Property to transfer coal across the Property because [they have] continued to profit from [their] coal preparation plant and related coal sales and [they have] avoided the cost of arranging for an alternative means of transporting the coal or contracting with Plaintiffs for the right to use the Property to transport coal . . . .

*Id.* ¶ 25. The plaintiffs allege that Kopper and INMET are willfully trespassing and disregarding the plaintiffs' rights of immediate and actual possession of the Property.

Count I of the plaintiffs' Amended Complaint is a breach of contract claim against Ark Land. The plaintiffs assert that Ark Land is liable for the amounts that Revelation and/or Blackjewel owed under the Wheelage Agreement and failed to pay because Ark Land remains liable for the breach of its assignee.

Count II is a trespass claim against Kopper, INMET, and Ark Land. The plaintiffs contend that because Kopper and INMET have benefitted from their willful trespass, they are liable under an implied contract theory for the value of the benefit they have received.

Count III is a claim of waste asserted against Kopper and INMET. Here, the plaintiffs deny that Kopper or INMET have a real estate interest in the Property. However, they allege that if Kopper or INMET do have an ownership interest in the Property, then they are the plaintiffs' cotenants. The plaintiffs do not consent to Kopper or INMET's transportation of coal across the Property. The plaintiffs assert that "[t]he transportation of coal across a non-consenting co-tenant's interest in the Property constitutes waste." *Id.* ¶ 43.

Count IV is an implied contract claim. It asserts that Kopper and INMET have been unjustly enriched by transporting coal across the Property without paying wheelage royalties. The plaintiffs contend that Kopper and INMET are liable to them in the amount they would have paid under a contract for the right to transport the coal across the Property.

Count V is a request for injunctive relief. The plaintiffs contend that they are irreparably harmed by Kopper and INMET's actions. They seek an order "compelling Kopper Glo and or INMET to permanently cease all coal transporting

on the Property and to remove the underground belt line from the Property and to reclaim the Property." *Id.* ¶ 53.

## B. Plaintiff-Intervenors' Amended Complaint.

The plaintiff-intervenors' allegations are similar, with a few noteworthy differences. By letter dated October 12, 2017, Ark Land notified the plaintiffs and plaintiff-intervenors that it had "assigned all of its right, title, and interest in and to" the Wheelage Agreement to Lone Mountain, its affiliate, on September 12, 2017. Pl.-Intervenors' Am. Compl. Ex. B, ECF No. 75-2. The letter stated that Lone Mountain's owner, Arch Coal, Inc., had subsequently "sold all of its ownership interests in" Lone Mountain to Revelation and that Revelation had "taken over the management and administration of the real estate holdings of" Lone Mountain. *Id.*

According to two recorded assignments of mining rights and leases, Revelation asserted that it was a party to certain mining rights, leases, easements, and related agreements. It assigned those interests to Blackjewel. An Assignment and Assumption of Mining Rights specifically lists the Wheelage Agreement as one of the agreements assigned by Revelation to Blackjewel. Blackjewel "absolutely and unconditionally" accepted the assignment and "expressly assume[d] and agree[d] to become responsible for all the terms, covenants, conditions and obligations" under the assigned agreements "which accrue from and after" September 14, 2017, excepting obligations arising from breaches of Revelation prior

to that date. Pl.-Intervenors' Am. Compl. Ex. C, ECF No. 75-3. Based on these recorded assignments, the plaintiff-intervenors conclude that Revelation did not receive any ownership interest in the Property but was only assigned Ark Land's interest in the Wheelage Agreement and other contracts and leases associated with the Property. Revelation then conveyed its interest in the Wheelage Agreement to Blackjewel, but Blackjewel never acquired any ownership interest in the Property to convey to Kopper or INMET.

The Wheelage Agreement provides that if the grantees default on payment of wheelage royalties, the grantors can give notice of default, and if the default is not cured within 30 days, the grantors have the option to terminate the wheelage rights. The plaintiff-intervenors issued a letter of default and notice to cure dated December 6, 2017, to Revelation, with a copy to Ark Land. Neither Revelation nor Ark Land paid the past-due amounts or otherwise responded to the letter. At the end of 2018, Blackjewel paid the plaintiff-intervenors for two months of wheelage royalties.

On July 11, 2018, the plaintiffs filed suit against Ark Land and Lone Mountain in this court. Case No. 2:18CV0022 ("2018 Suit"). The plaintiff-intervenors were not parties to the 2018 Suit and received no notice of it. In their complaint in the 2018 Suit, the plaintiffs alleged that they had not received any wheelage royalties from Ark Land or Lone Mountain since September 9, 2017. They requested records from Ark Land and Lone Mountain but received no records in response. The

plaintiffs alleged that Ark Land and Lone Mountain were therefore in breach of the Wheelage Agreement. The plaintiffs in the 2018 Suit sought a declaratory judgment and specifically asked the court to:

> A. Require the defendants to produce the requested records; and
>
> B. Determine the amount of wheelage royalties owed to plaintiffs by the defendants; and
>
> C. Enter judgment, plus pre-judgment and post-judgment interest, in favor of the plaintiffs for that amount; and
>
> D. Award attorneys' fees and costs expended in this action to the extent allowed by law; and
>
> E. Such other and further relief as the nature of this case may require or the Court deems proper.

Compl. 5, Case No. 2:18CV0022, ECF No. 1. Ark Land and Lone Mountain filed answers to the complaint, and in late October, the parties informed the court that they had reached a settlement.

On October 26, 2018, I entered an Order that stated:

> The court having been advised that a settlement has been reached, the case is hereby administratively closed. The court retains jurisdiction for sixty (60) days. If desired, the parties may hereafter within such time submit an agreed stipulation, final order or judgment. If no such agreed stipulation, final order or judgment is timely submitted, and if no party files a motion to reopen the case or to enforce the terms of the settlement within such time, this action shall, without further order, stand dismissed with prejudice.

Order Closing Case, Case No. 2:18CV0022, ECF No. 15. No stipulation, final order, or judgment was ever submitted.

The Settlement Agreement, which was never submitted to the court in the 2018 Suit, was between the plaintiffs in this case (referred to in that agreement as "Barnwells") and Revelation. The Settlement Agreement acknowledges there are other parties to the Wheelage Agreement and that Revelation is the assignee of the Wheelage Agreement. In the Settlement Agreement, Revelation admitted that it was obligated to pay wheelage royalties and that it had not paid wheelage royalties since September 1, 2017. Revelation further admitted that it had transported 910,399 tons of coal across the Property from September 1, 2017, through July 31, 2018, and that it had also transported coal across the Property during the month of August 2018. Revelation admitted that it had not paid wheelage royalties for 980,100.92 tons of coal transported between September 1, 2017, and August 31, 2018. The Settlement Agreement required Revelation to pay past due wheelage royalties to the Barnwells and to keep future wheelage royalties current. The Settlement Agreement did not obligate Revelation or Ark Land to make any payments to the plaintiff-intervenors. The Settlement Agreement expressly stated that the Barnwells did not represent the other parties to the Wheelage Agreement. The Settlement Agreement further stated that the parties did not intend to modify any obligations that Ark Land or Lone Mountain may have to the Barnwells under the Wheelage Agreement.

Like the plaintiffs, the plaintiff-intervenors allege that Revelation and/or Blackjewel did not have any ownership interest in the Property to convey to Kopper

and/or INMET. "[N]o deed has been filed with the Clerk's Office of the Circuit Court of Lee County, Virginia, substantiating Kopper Glo or Inmet's ownership interest." Pl.-Intervenors' Am. Compl. ¶ 38, ECF No. 75. "Furthermore, the properties listed in Exhibits to the Bankruptcy Court's order approving the sale did not provide details regarding the deed purporting to convey Ark Land's ownership interest to Revelation/ Blackjewel." *Id.* ¶ 39. Moreover, "Lee County tax records do not show Kopper Glo or Inmet [as] owning the property and current 2020 tax bills are being sent to Lone Mountain Processing at the former Blackjewel address in Milton, WV." *Id.* ¶ 40.

The plaintiff-intervenors allege that Kopper and Inmet have continued transporting coal across the Property without their consent. Like the plaintiffs, they assert that Kopper and Inmet are willfully trespassing and consciously disregarding the plaintiff-intervenors' rights of immediate and actual possession. In addition to their failure to pay wheelage royalties, the plaintiff-intervenors also aver that Kopper and Inmet have failed to provide them with royalty reports confirming the calculation of wheelage royalties owed. They note that the Settlement Agreement stated that the 2018 Suit would be dismissed without prejudice.

Based on these factual allegations, the plaintiff-intervenors bring essentially the same claims as the plaintiffs. In Count I of Plaintiff-Intervenors' Amended Complaint, they assert a breach of contract claim against Ark Land based on breach

of the Wheelage Agreement.  Count II asserts a trespass claim against Kopper and INMET.  Here, the plaintiff-intervenors claim that Kopper and INMET do not have a fee simple ownership interest in the Property, but even if they do, their entry and use of the Property exceeds the scope of their authority.

Count III is a claim of waste.  The plaintiff-intervenors contend that transportation of coal across the property by Kopper and INMET without the consent of their cotenants constitutes waste.  The plaintiff-intervenors assert that Kopper and INMET's use of the property amounts to an exclusion of the non-consenting owners. They claim that Kopper and INMET are committing an "unreasonable or improper use, abuse, mismanagement, or omission of duty" which "results in physical damage to real estate and substantial diminution in value of Property."  *Id.* ¶ 74.  Count IV is a claim of implied contract based on Kopper and INMET's unjust enrichment. Finally, in Count IV, the plaintiff-intervenors request injunctive relief.

The defendants have filed motions to dismiss, which have been fully briefed and orally argued and are ripe for decision.

## II.

Federal pleading standards require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim.  *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In order to survive a motion to dismiss, the plaintiff must "state[ ] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon its "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a pleading, the court accepts as true all well-pled facts. *Id.* A complaint does not need detailed factual allegations to survive a motion to dismiss; however, it must have more than labels and conclusions or a recitation of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A. Res Judicata.

Ark Land argues that the plaintiffs' and plaintiff-intervenors' claims for contract damages that arose prior to the dismissal of the 2018 Suit are barred by res judicata. Res judicata is an affirmative defense. Fed. R. Civ. P. 8(c)(1). It should be decided on a motion to dismiss only when its applicability is clear from the face of the complaint. *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). I apply Virginia res judicata law because the judgment in the 2018 Suit was rendered by this Virginia-based federal court pursuant to its diversity jurisdiction, and I find that Virginia claim preclusion law is not incompatible with federal interests. *See Q. Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 218, 218 n.1 (4th Cir. 2006).

Virginia Supreme Court Rule 1:6(a) states,

A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final

judgment, is forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought.

The burden of proving res judicata is on the proponent of its applicability. *Q. Int'l Courier, Inc.*, 441 F.3d at 219.

Res judicata is a "'practical' doctrine[ ]" that considers "whether the party has previously had a fair shot with respect to the claims raised in the present action." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017). "As a general proposition, a judgment of dismissal which expressly provides that it is 'with prejudice' operates as res judicata and is as conclusive of the rights of the parties as if the suit had been prosecuted to a final disposition adverse to the plaintiff." *Raley v. Haider*, 747 S.E.2d 812, 815 (Va. 2013) (internal quotation marks, citation, and alterations omitted). The Supreme Court of Virginia exhaustively reviewed the history of the Commonwealth's res judicata law in *Funny Guy, LLC v. Lecego, LLC*, 795 S.E.2d 887 (Va. 2017). It is clear from the court's discussion in that case that "it does not matter that the second suit includes alternative legal theories or would require evidence not present in the first suit." *Id.* at 895. Virginia applies a transactional approach, asking whether the claims in each suit arise out of the same transaction or occurrence. *Id.* (describing the suits at issue

in that case as arising out of a single dispute: "Funny Guy wants to be paid for work it did for Lecego.").

For res judicata to apply, "there must be an identity of parties between the present suit and the prior litigation asserted as a bar." *Raley*, 747 S.E.2d at 815 (internal quotation marks and citation omitted). For the res judicata bar to apply to someone who was not a party to the prior litigation, the person or entity must have been in privity with a party to the prior litigation. *See id.* "Privity is a mutual or successive relationship to the same rights of property, or such an identification in the interest of one person with another as to represent the same legal rights, and when applied to a judgment or decree refers to one whose interest has been legally represented at the trial." *Lane v. Bayview Loan Servicing, LLC*, 831 S.E.2d 709, 714 (Va. 2019) (internal quotation marks, citation and alterations omitted). "Privity between parties exists when the interests of one party are so identified with the interests of another that representation by one party is representation of the other's legal right." *Nathan v. Takeda Pharms. Am., Inc.*, 546 F. App'x 176, 178 (4th Cir. 2013) (unpublished) (citing *Weinberger v. Tucker*, 510 F.3d 486, 491 (4th Cir. 2007)). "Whether privity exists is determined on a case by case examination of the relationship and interests of the parties." *Lane*, 831 S.E.2d at 715 (internal quotation marks, citation, and alterations omitted).

Here, the plaintiffs' claim against Ark Land for wheelage royalties up to the date of the dismissal of the 2018 Suit is clearly barred by res judicata. The plaintiffs' 2018 claim may have been styled as a request for records, but the plaintiffs expressly asked the court to calculate and award unpaid royalties under the Wheelage Agreement. The plaintiffs are the same in both suits, and defendant Ark Land was also a defendant in that suit.

The parties may have intended the dismissal of that case to be without prejudice, but they never informed the court of that desire. I therefore ordered that the case was dismissed with prejudice. The plaintiffs cannot now relitigate their claim against Ark Land for wheelage royalties from September 1, 2017, to December 26, 2018, 60 days after entry of the Order Closing Case, when the 2018 Suit was dismissed with prejudice. To the extent the plaintiffs seek to recover from Ark Land royalties incurred after December 26, 2018, those claims are not barred, as the plaintiffs could not have recovered those prospective amounts in the 2018 Suit when the alleged breaches had not yet occurred.[3]

---

[3] Ark Land argues that it cannot be liable for later breaches of the Wheelage Agreement because it assigned its interest in the agreement to Revelation and/or Blackjewel. However, there is no indication in the pleadings that there was a novation or that Ark Land was ever released from the Wheelage Agreement. At this stage, it is plausible that Ark Land could be liable for breaches of its assignee. I therefore decline to dismiss the plaintiffs' and plaintiff-intervenors' breach of contract claim against Ark Land as it pertains to arrearages incurred after Ark Land assigned the Wheelage Agreement.

As to the plaintiff-intervenors, I find that the 2018 Suit does not bar their claims because the plaintiffs did not represent their interests in that suit. While the plaintiffs and plaintiff-intervenors are cotenants of the Property and are all grantors with respect to the Wheelage Agreement, the plaintiffs made plain in the Settlement Agreement that they were not representing the plaintiff-intervenors' interests. Ark Land knew that there were other grantors who were owed royalties under the Wheelage Agreement, and it knew that those grantors were not parties to the 2018 Suit. It made no effort to notify the plaintiff-intervenors of the suit or settlement. The settling parties — the plaintiffs and Revelation — only agreed to payment of a percentage of the unpaid royalties equal to the plaintiffs' share of the interest in those royalties. The plaintiff-intervenors had no real opportunity to litigate the matter and received nothing as a result of the settlement. To bar the plaintiff-intervenors' claim against Ark Land for pre-settlement wheelage royalties under these circumstances would be unjust. Despite their relationship as co-owners of land and similarly positioned parties to the Wheelage Agreement, I find that the plaintiffs were not in privity with the plaintiff-intervenors in the 2018 Suit. *See Raley*, 747 S.E.2d at 817 ("Because MISI and Haider did not represent MIPI's and Wise's interests in the first suit, MIPI and WISE were not in privity with MISI or Haider."). I will therefore deny Ark Land's motion to dismiss the plaintiff-intervenors' breach of contract claim.

*B. Remaining Claims.*

The plaintiffs' and plaintiff-intervenors' claims of trespass, waste, and implied contract all rest on disputed issues of fact. The plaintiffs and plaintiff-intervenors have plausibly alleged facts supporting these claims under Virginia and Kentucky law. Discovery is necessary to determine the nature of Kopper and INMET's interests in the land and the Wheelage Agreement, as well as what damage, if any, the Property has sustained as a result of their transportation of coal through the Property. As to these remaining claims, I will deny the motions to dismiss.

III.

For the foregoing reasons, it is **ORDERED** as follows:

1. Ark Land, LLC's Motion to Dismiss Plaintiffs' Amended Complaint, ECF No. 33, is GRANTED IN PART and DENIED IN PART. It is GRANTED as to wheelage royalties incurred prior to December 26, 2018, and it is DENIED as to any subsequent wheelage royalties;

2. The Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted filed by Kopper Glo Mining, LLC and Inmet Mining, LLC, ECF No. 34, is DENIED;

3. The Motion to Dismiss Plaintiff-Intervenors' Amended Complaint filed by Kopper Glo Mining, LLC and Inmet Mining, LLC, ECF No. 76, is DENIED; and

4. Ark Land LLC's Motion to Dismiss Intervenors' Amended Complaint, ECF

No. 78, is DENIED.

ENTER:   July 7, 2021

/s/  JAMES P. JONES
United States District Judge