## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **DARRELL BARNWELL, ET AL.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:20CV00011 |
| and | ) | |
| | ) | **OPINION AND ORDER** |
| **HARLAN LEE LAND, LLC, ET AL.,** | ) | |
| | ) | JUDGE JAMES P. JONES |
| Plaintiff-Intervenors, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **ARK LAND, LLC, ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

*Daniel R. Bieger, DAN BIEGER, PLC, Bristol, Tennessee, and David B. Jordan, DAVE B. JORDAN, P.C., Kingsport, Tennessee, for Plaintiffs; Bryson J. Hunter, SPILMAN THOMAS & BATTLE, PLLC, Roanoke, Virginia, and Mark E. Heath, SPILMAN THOMAS & BATTLE, PLLC, Charleston, West Virginia, for Plaintiff-Intervenors; James H. Price, LACY, PRICE & WAGNER, P.C., Knoxville, Tennessee, Timothy E. Scott, Kingsport, Tennessee, and Kenneth D. Hale, THE HALE LAW FIRM, Bristol, Tennessee, for Defendants Kopper-Glo Mining, LLC, and INMET Mining, LLC.*

In this action invoking the court's diversity jurisdiction, it is asserted that the defendants have wrongfully transported coal across a parcel of land owned jointly with others and are thus liable to the coowners under various legal theories. The parties have filed cross motions for summary judgment. For the reasons that follow, I will grant in part and deny in part the motions.

I.

The following facts, taken from the summary judgment record, are largely undisputed.

The plaintiffs and plaintiff-intervenors together own an undivided 40% interest in a nearly 4,000-acre tract of land located in both Lee County, Virginia, and Harlan County, Kentucky (the Property).[1]  Ark Land Co. (Ark Land) owned the remaining 60% undivided interest.[2]  There is 4,000-foot belt conveyor located partially above and partially below ground on the Property that is used to transport coal produced from mines operated on adjacent property to a coal preparation plant located on the Property, where the coal is cleaned and loaded on railway cars for further delivery.  Without use of the belt conveyor, it would be necessary to transport the coal from the mines to the preparation plant overland by truck at a greater cost.

In 2011, the plaintiffs and plaintiff-intervenors entered into a 25-year Wheelage and Easement Agreement (Wheelage Agreement) with Ark Land to allow for the transportation of coal via the belt conveyor in exchange for a fee based on

---

[1]  The division of ownership in the 40% undivided interest in the Property is 41.7135% in the plaintiffs and 58.2865% in the plaintiff-intervenors.  Pls.-Intervenors' Mot. Summ. J. Ex. 2, John T. Boyd Co. Expert Rep. 6, ECF No. 128-2.  I will hereafter refer to all coowners, technically tenants in common, *Tenancy, Black's Law Dictionary* (11th ed. 2019),  as cotenants.

[2]  The party named as a defendant in this case is Ark Land, LLC rather than Ark Land Co.  The parties do not address this discrepancy.  For convenience, I will refer to the party as Ark Land.

the amount of coal transported, a so-called wheelage royalty fee.[3]  Pls.-Intervenors'
Mot. Summ. J. Ex. 1, Wheelage Agreement 9, ECF No. 128-1.  On September 14,
2017, Ark Land assigned its rights in the Wheelage Agreement to its affiliate, Lone
Mountain, a wholly owned subsidiary of Arch Coal, Inc. (Arch Coal).  Two days
later, Arch Coal sold all of its ownership interest to Revelation Energy, LLC
(Revelation).

For nearly two years, Revelation used the belt conveyor to transport coal
across the Property.  In July of 2019, however, Revelation and its parent company,
Blackjewel, L.L.C., along with other affiliates, filed a Chapter 11 bankruptcy
petition in the United States Bankruptcy Court for the Southern District of West
Virginia.  On September 17, 2019, the bankruptcy court authorized defendants
Kopper Glo Mining, LLC (Kopper Glo), and INMET Mining, LLC (INMET), to
purchase assets from the debtors, including the Property.  Defs.' Mem. Supp. Mot.
Summ. J. Ex. B, Blackjewel Bankr. Order Approving Sale (Sale Order) 14, ECF No.
131-2.  The bankruptcy court's order expressly approved the Sale Agreement
between the parties.  *Id.* at 15.  The bankruptcy court thereafter rejected all contracts
of the debtors not expressly assumed by the bankruptcy trustee.  *Id.* Ex. E,
Blackjewel Bankr. Confirmation Order 24–25, ECF No. 131-5.

---

[3]  "This type of payment is called 'wheelage' and is recognized in this area as an
acceptable practice."  *United States v. 180.37 Acres of Land*, 254 F. Supp. 678, 684 (W.D.
Va. 1966).

In late 2021, Ark Land sent a letter to the plaintiffs and plaintiff-intervenors, notifying them that the Wheelage Agreement was terminated, effective December 29, 2021.  Pls.-Intervenors' Mot. Summ. J. Ex. 6, Finnerty Letter, ECF 126-6.  Ark Land asserted that the Wheelage Agreement was no longer in force or effect but that the notice was being issued "out of an abundance of caution."  *Id.*

It is claimed that more than two million tons of coal were transported across the Property using the belt conveyor between September of 2017 and December of 2021.  John T. Boyd Co. Expert Rep. 11–12, 14–15, ECF No. 128-2.[4]  INMET and Kopper Glo have made no wheelage payments.

In 2020, the plaintiffs filed this lawsuit, alleging in their Amended Complaint state-law claims for breach of contract against Ark Land (Count I); trespass against Ark Land, INMET, and Kopper Glo (Count II); waste against INMET and Kopper Glo (Count III); implied contract against INMET and Kopper Glo (Count IV); and injunctive relief against INMET and Kopper Glo (Count V).   The plaintiff-intervenors thereafter intervened in the action and asserted the same claims in their separate Amended Complaint as the plaintiffs, except in their Count I they also

---

[4]   For ease of reference throughout this opinion, I have cited to the ECF page numbers.  The defendants argue that the plaintiffs cannot rely on the expert report by John D. Boyd Company to prevail on summary judgment because it has not been accompanied by an affidavit or sworn declaration.  Defs.' Br. Opp'n 2–4, ECF No. 146.  The plaintiff-intervenors, however, submitted a copy of the report accompanied by a sworn declaration.  John T. Boyd Co. Expert Rep. 1–3, ECF No. 128-2.

allege a breach of contract claim against INMET and Kopper Glo for unpaid wheelage royalties. In response, INMET and Kopper Glo filed counterclaims seeking a declaratory judgment of their rights and a partition of the Property.

Ark Land has advised the court that it has reached a settlement with the plaintiffs and plaintiff-intervenors. As to the remaining claims against INMET and Kopper Glo, the plaintiffs and plaintiff-intervenors have moved for summary judgment only as to Count II. They contend that the defendants do not have an ownership interest in the Property because there is no evidence of a deed and the bankruptcy court's order was insufficient to convey legal title and thus the defendants are liable as trespassers. Alternatively, they argue that the use of the belt conveyor to transport foreign coal from other property without the consent of all cotenants is a trespass. Finally, the plaintiff-intervenors contend that INMET and Kopper Glo are successors to Ark Land under the Wheelage Agreement and thus liable under that agreement for unpaid wheelage royalties.

INMET and Kopper Glo have moved for summary judgment as to all claims against them.[5] They argue that while a deed is preferable to provide notice under the relevant recording act statutes, the bankruptcy court's order immediately transferred title and as cotenants they cannot be liable for trespass against other

---

[5] Neither INMET nor Kopper Glo have moved for summary judgment as to their counterclaims.

cotenants.  As to the plaintiff-intervenors' Count I breach of contract claim, they argue that the bankruptcy trustee rejected the Wheelage Agreement and thus they cannot be liable as successor parties to that contract.  INMET and Kopper Glo further contend that Kopper Glo is not a proper party because it has never used or held a possessory interest in the Property.  The plaintiffs do not oppose the defendants' motion as to Count I; however, the plaintiff-intervenors continue to assert the breach of contract claim as an alternative theory to their trespass claim.

The motions have been fully briefed, orally argued, and are ripe for a decision.

## II.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

At bottom, a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find for the non-moving party. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable factfinder to return a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248.

The parties agree that Virginia and Kentucky law applies in this case. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Molina-Ray v. King*, No. 161189, 2017 WL 4171658, at *4 (Va. Sept. 21, 2017) (holding Virginia choice-of-law principles dictate the law of the situs applies); *Lewis v. Am. Fam. Ins. Grp.*, 555 S.W.2d 579, 581–82 (Ky. 1977) (holding that Kentucky follows the Restatement approach); Restatement (Second) Conflict of Laws §§ 6, 222 (2022) (applying the most-significant-relationship test to property disputes).

III.

A.   CLAIMS AGAINST KOPPER GLO.

The defendants seek summary judgment as to all claims against Kopper Glo. They argue that Kopper Glo has never used or possessed the Property. At the hearing on these motions, I inquired of counsel as to Kopper Glo's role in this case. The defendants' attorney explained that Kopper Glo placed the initial bid to purchase the Property at a public auction but as the process continued, Kopper Glo's parent

company created a sister company, INMET, who holds the ownership rights.  He further represented that Kopper Glo no longer operates or exists.

While I have no reason to discredit counsel's representations, I am obligated to consider only the evidence of record, and not the assertions of counsel.  Fed. R. Civ. P. 56(c).  There is simply not sufficient evidence in the record to support this defense.  For instance, the defendants have not offered any proof of Kopper Glo's corporate status nor any evidence to establish how the two entities relate to each other.

The evidence that is provided offers only conflicting inferences.  Kopper Glo was designated as the purchasing party in the bankruptcy court's order approving the sale, whereas INMET is recited as a party to the Sale Agreement.  The defendants also filed a declaration from Hunter Hobson, the president of INMET *and* Kopper Glo.  His statement, however, does not address Kopper Glo's alleged dissolution and in fact, appears to suggest that the company remains in operation.  Defs.' Mem. Supp. Mot. Summ. J. Ex. C, Hobson Decl. ¶ 2, ECF No. 131-3.  Hobson declared that INMET has been a cotenant since 2019 and that Kopper Glo never "possessed the Property or used the Property for any purpose."  *Id.* ¶¶ 3, 6.  But that alone does not definitively resolve whether Kopper Glo could still be held jointly liable.

In sum, there are disputed factual issues pertaining to Kopper Glo's interest in the Property.  I conclude that summary judgment is inappropriate and will deny the defendants' motion.

### B.   BREACH OF CONTRACT (COUNT I).

In Count I of their Amended Complaint, the plaintiff-intervenors assert that the present defendants breached the Wheelage Agreement by failing to pay royalties on all coal transported across the Property.  To state a valid claim for breach of contract under Virginia and Kentucky law, there first must be a legally enforceable contract.  *Ramos v. Wells Fargo Banks, NA*, 770 S.E.2d 491, 493 (Va. 2015); *Kovacs v. Freeman*, 957 S.W.2d 251, 254 (Ky. 1997).  The parties do not dispute that the Wheelage Agreement was rejected during the bankruptcy proceedings when the trustee did not expressly assume the contract.  11 U.S.C. § 365(d)(4). The defendants therefore argue that the rejection prevented the transfer of any obligations under the contract.  The plaintiff-intervenors make two arguments in response.  First, they argue that the defendants' obligations continued under a rejection-is-breach theory.  Second, they contend that the defendants are "successors" of Ark Land under the Wheelage Agreement.

As to the first argument, the plaintiff-intervenors rely upon the Supreme Court's decision in *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652 (2019).  In *Mission*, the Court declined to create a special carve out for

trademark licensing agreements in bankruptcy proceedings and explained that, as with most contracts, the general rule set forth in 11 U.S.C. § 365 establishes that the rejection of an executory contract does not operate as a recession of rights granted under the contract. *Id.* at 1666. Instead, rejection has the effect of breach by the debtor. *Id.* The counterparty retains all rights that would ordinarily survive the breach of a contract, including a claim for damages resulting from the debtor's nonperformance. *Id.* at 1658. But the plaintiff-intervenors' reliance on *Mission* is misplaced. Under the rejection-is-breach theory, the plaintiffs-intervenors would have a valid claim only against *the debtor* — Blackjewel — and not the asset purchaser.

But even if there was a valid claim against the defendants under this theory, the counterparty retains only rights previously guaranteed under the contract. The Wheelage Agreement provided the obligation to pay the royalty fee applied to coal transported across the Property by Ark Land, or its respective "successors or assigns." Wheelage Agreement 9, ECF No. 128-1. It is undisputed that INMET and Kopper Glo are not Ark Land's assigns. There is also no evidence that they are Ark Land's successors. The only facts that support the plaintiff-intervenors' claim are that the defendants transported coal across the Property in the same fashion as authorized by the Wheelage Agreement.

In any event, the bankruptcy court's order authorizing the sale is dispositive on this issue.  The court determined that unless provided for in the Sale Agreement, the sale was made "free and clear" of any "rights or Claims based on any successor or transferee liability," and that "[t]he Buyer is not and shall not be deemed a 'successor' to the Debtors or their estates . . . under any theory of law or equity." Blackjewel Bankr. Sale Order 10, 28, ECF No. 131-2.

For these reasons, I will grant the defendants' motion as to Count I of the plaintiff-intervenors' Amended Complaint.

## C.    TRESPASS (COUNT II).

In Count II of their respective amended complaints, the plaintiff and plaintiff-intervenors assert that the defendants do not have an ownership interest in the Property and therefore are liable as trespassers, but even if they are cotenants, they remain liable for the transport of coal across the Property without the consent of all cotenants.  The resolution of the parties' cross-motions for summary judgment turns on two issues: first, whether the bankruptcy court's sale order conveyed legal title to the Property; and second, whether a cotenant may maintain a trespass claim against another cotenant under Virginia law.

### 1.   Sale of the Property.

The parties dispute whether INMET and Kopper Glo are cotenants of the Property by virtue of the bankruptcy court's sale order.  The plaintiffs and plaintiff-

intervenors argue that under Virginia law, "legal title to property can be conveyed only by deed or will." *F.D.I.C. v. Hish*, 76 F.3d 620, 623 (4th Cir. 1996); Va. Code Ann. § 55.1-101. Kentucky follows this same rule. Ky. Rev. Stat. Ann. § 382.010. Here, a copy of the deed has not been produced in discovery and indeed, there is no evidence that one ever existed.

In response, the defendants argue that production of a deed is unnecessary because the bankruptcy court's sale order immediately transferred title and the recording of a deed is not necessary to vest legal title, citing *Hunton v. Wood*, 43 S.E. 186, 188 (Va. 1903), and *Newsom v. Kurtz*, 5 S.W. 575, 576 (Ky. 1887). They also point out that the bankruptcy court's sale order explicitly provided that the approved transfer is a "legal, valid and effective transfer" of the assets that "will vest the Buyer with all right, title and interest" in the Property. Blackjewel Bankr. Sale Order 14, ECF No. 131-2.

I agree that the recording of a deed is not necessary for the transfer of title. And the lack of recording is irrelevant in this case since the superiority of competing claims of title is not an issue. Aside from the effect of the bankruptcy court's order, under Virginia law, "'[a]s soon as a contract is made for the sale of an estate, equity considers the buyer as the owner of the land, and the seller as the trustee for him.'" *Devine v. Buki,* 767 S.E.2d 459, 465 (Va. 2015) (quoting *Ferry v. Clarke*, 77 Va. 397, 407 (1883)). Kentucky has adopted a similar rule. *Phillips v. Rosquist*, 628

S.W.3d 41, 51 (Ky. 2021) ("Generally, when a party signs a contract to purchase real estate, the purchaser is viewed as owner of the land in equity, i.e., he has equitable title.").  Accordingly, the defendants at least have a claim of equitable title to the Property.

## 2.   Trespass by a Cotenant.

Now that I have determined that the defendants are cotenants in the Property, I must consider whether a cotenant may maintain a trespass action against another cotenant and if there are any disputes of material fact precluding summary judgment.

A trespass is "an unauthorized entry onto property which results in interference with the property owner's possessory interest therein." *Cooper v. Horn*, 448 S.E.2d 403, 406 (Va. 1994) (internal quotation marks and citation omitted). However, every cotenant, regardless of its fractional share, enjoys the right to possess, use, and enjoy the whole of the common estate. *City of Richmond v. SunTrust Bank*, 722 S.E.2d 268, 271 (Va. 2012) (citing *Graham v. Pierce*, 60 Va. 28, 38 (1869)); *Martin v. Martin*, 878 S.W.2d 30, 31 (Ky. Ct. App. 1994). Consequently, a cotenant generally cannot maintain a trespass action against another cotenant, as unity of possession is a primary characteristic of tenancy in common. *See, e.g.*, *Taylor v. Bradford*, 244 S.W.2d 482, 483 (Ky. 1951).   A cotenant nevertheless does not have the right to exclude other cotenants by appropriating for themselves the entire estate or a specific portion — that is, a cotenant cannot

maintain exclusive possession.  *Chosar Corp. v. Owens*, 370 S.E.2d 305, 308 (Va. 1988); *Cooper*, 448 S.E.2d at 406.

In line with these property law principles, the plaintiffs and plaintiff-intervenors argue that Virginia law recognizes that a cotenant commits a trespass where it hauls foreign coal across the common estate without the consent of all cotenants.[6]  Both parties rely upon *Chosar Corp. v. Owens*.  In *Chosar*, the Supreme Court of Virginia considered whether Chosar Corporation, a cotenant to a lease of mineral rights in a tract of land, committed waste by mining coal from the property without the consent of all cotenants and if it committed a trespass by transporting coal mined from other property through an underground tunnel created by its own mining.  The court ruled against Chosar on both counts.

First, the court reasoned that the extraction of coal constituted waste and that "no tenant can change or alter the common property to the injury of his cotenants without their consent."  370 S.E.2d at 307 (citing *Woods v. Early*, 28 S.E. 374, 376 (Va. 1897)).  The nonconsenting cotenants therefore were entitled to an injunction

---

[6]  The plaintiffs and plaintiff-intervenors do not address whether a trespass action can be maintained against a cotenant under Kentucky law for the cotenant's transport of foreign coal across a surface tract.  However, it appears that it may depend upon the facts.  *Quillen v. Kannan Mining Co.*, No. 2006-CA-002493-MR, 2007 WL 4355509 (Ky. Ct. App. Dec. 14, 2007) (unpublished).  There, the court upheld the dismissal of a trespass claim brought by a cotenant against another cotenant for the haulage of foreign coal across the property, noting that "[t]he record is silent as to how the hauling of any coal across the property, in and of itself, violated [the cotenant's] rights or operated to oust him from the property."  *Id.* at *3.

to prevent future waste.  Second, the court determined that the mining had excluded nonconsenting cotenants from their interest in the property, reasoning that "Chosar's conduct of mining operations was *such an appropriation* of a specific portion . . . [that it was] in effect, a unilateral partitioning." *Id.* at 308 (emphasis added).  The court added that "[s]imilarly, the transporting of coal from [a third party's] adjoining land through the underground passageway created in the [property] by Chosar's mining constitutes an exclusion of the nonconsenting owners' interest in the property." *Id.*  The court concluded that allowing Chosar to use the underground tunnel would permit the company to profit from its waste.  *Id.*

The defendants attempt to distinguish *Chosar* by arguing that there has been no mining or the commission of waste on the Property, which they maintain is necessary to establish a trespass.[7]  They claim to perform only maintenance and repairs as needed on preexisting surface roads to support its transportation activities and ensure the condition of the beltway remains intact.  Conversely, the plaintiffs and plaintiff-intervenors interpret *Chosar* as holding that it is always a trespass for a cotenant to transport coal across the common estate without the consent of all cotenants, regardless of whether there is mining or waste on the property.  In other

---

[7]  The defendants also argue that the *Chosar* decision is distinguishable because Chosar was a leaseholder of mineral rights.  However, a lessee acquires no greater rights than the lessor, so this distinction would not alter the analysis.

-15-

words, this type of use constitutes a per se exclusion of a cotenant's right to possess the property.

The better interpretation is somewhere in the middle.  I find that *Chosar* did not establish a per se rule — either that there must be mining, or there is always a trespass with wheelage use absent unanimous cotenant consent.  Rather, the court was concerned not only by *the type* of use but also *the degree* of use in that particular case — both of which are fact-based issues.  Specifically, the court emphasized the scale of the mining operation and noted that the underground tunnels were formed in order to facilitate that mining.  This, the court reasoned, amounted to "such an appropriation" that it excluded the nonconsenting cotenants' rights. *Id.*

Here, it is undisputed that there has been no mining on the Property by the defendants.  It is represented  that the beltway is approximately 4,000-feet long and is partially above ground and partially below ground.  The defendants' president, Hunter Hobson, also testified that he felt that "this mine" was exclusive to his companies' ownership.  Pls.' Mot. Summ. J. Ex. H, Hobson Dep. 2–3, ECF No. 121-8.  The plaintiffs and plaintiff-intervenors contend that Hobson's testimony and the mere fact that the beltway exists are sufficient to meet *Chosar*'s standard.  The defendants argue, of course, that these facts are insufficient.

I find that the nature of the defendants' use is not fully apparent on the present record.  For instance, the size and scale of the beltway, as well as how much

infrastructure is required to repair and maintain it, remain unclear.  In short, whether the defendants' use is extensive enough to establish an exclusion is a fact-based matter for resolution by the trier of fact.  I find thus that there are genuine issues of material fact precluding summary judgment as to the claim of trespass.

D.    OTHER CLAIMS.

I will also deny the defendants' motion as to the plaintiffs' and plaintiff-intervenors' remaining claims for waste, implied contract, and injunctive relief.  The waste claim rests on the same disputed issues of fact and the implied contract and injunctive relief claims turn on the resolution of the trespass and waste claims.

III.

For the foregoing reasons, it is **ORDERED** as follows:

1.    The Motion for Summary Judgment filed by the Plaintiffs, ECF No. 121, is DENIED;

2.    The Motion for Summary Judgment filed by the Plaintiff-Intervenors, ECF No. 128, is DENIED; and

3.    The Motion for Summary Judgment filed by Kopper Glo Mining, LLC, and INMET Mining, LLC, ECF No. 130, is GRANTED IN PART and DENIED IN PART.  The motion is granted as to Count I of Plaintiff-Intervenors' Amended Complaint.  The motion is denied as to all other claims.

-17-

ENTER:   June 27, 2022

/s/  JAMES P. JONES
Senior United States District Judge